# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re,<br><br>THE ROMAN CATHOLIC BISHOP OF<br>SAN DIEGO, a corporation sole,<br><br><div align="right">Debtor.</div><br>―――――――――――――――<br><br>JACOB OLIVAS, an individual; PATRICK<br>OLIVAS, an individual,<br><br><div align="right">Plaintiffs,</div><br>v.<br><br>DIOCESE OF SAN DIEGO EDUCATION<br>AND WELFARE CORPORATION, et al.,<br><br><div align="right">Defendants.</div> | CASE NO. 07cv1355-IEG(RBB)<br>Bankruptcy Case No. 07-00989-LA11<br>Adversary Case No. 07-90078<br><br><br>Order Denying Debtor's Motion to<br>Withdraw Reference |

    The Debtor, the Roman Catholic Bishop of San Diego ("Debtor"), has filed a motion pursuant to 28 U.S.C. § 157(d) to withdraw the reference to the bankruptcy court of 127 personal injury tort adversary actions involving allegations of sexual abuse. The Official Committee of

<div align="center">- 1 -</div>

Dockets.Justia.com

1  Unsecured Creditors ("Committee") has filed an opposition.[1] In addition, some of the plaintiffs in

2  the individual adversary actions have filed oppositions joining in the arguments raised by the

3  Committee. The Debtor has filed a reply.[2]

4      A hearing was held before Chief Judge Irma E. Gonzalez on August 17, 2007.  Susan

5  Boswell, Gerald Kennedy, and Geraldine Valdez appeared on behalf of the Debtor.  James Stang

6  and Robert Orgel appeared on behalf of the Committee.  Victor Vilaplana appeared on behalf of

7  the Organization of Parishes for the Roman Catholic Diocese of San Diego. Andrea Leavitt, Irwin

8  Zalkin, Christine Bauer, and Laurence Drivon appeared on behalf of some of the individual

9  plaintiffs in the adversary actions.  Upon consideration, for the reasons set forth herein, the

10  Debtor's motion is DENIED.

11                      ***Discussion***

12      The Debtor moves to withdraw the reference based upon the provisions of 28 U.S.C.

13  § 157(d).  That section provides as follows:

14          The district court may withdraw, in whole or in part, any case or proceeding
             referred under this section, on its own motion or on timely motion of any party, for
15          cause shown.  The district court shall, on timely motion of a party, so withdraw a
             proceeding if the court determines that resolution of the proceeding requires
16          consideration of both title 11 and other laws of the United States regulating
             organizations or activities affecting interstate commerce.
17
     The Debtor argues this Court must withdraw the reference under the second sentence of § 157(d),
18
     or alternatively that it has shown cause allowing this Court to withdraw the reference under the
19
     first sentence of § 157(d).
20
     *1. Mandatory Withdrawal*
21
         The Debtor argues its challenge to the constitutionality of SB1779 requires withdrawal of
22
     the reference for the sexual abuse adversary actions under the second sentence of § 157(d).  As set
23

24          [1]The Committee filed evidentiary objections regarding the declarations of Karen Landers,
     Daniel White, and Maria Roberts filed in support of the Debtor's motions.  Although some of the
25   evidentiary objections are well-taken, these declarations primarily provide background
     information. Therefore, the Court denies the Committee's motion to strike the objectionable
26   portions of the declarations.

27          [2]The Debtor also filed evidentiary objections regarding Irwin Zalkin's declaration in
     support of the opposition to the motion.  Mr. Zalkin's declaration primarily bears upon the merits
28   of whether the cases should be remanded, and is of limited evidentiary value with regard to the
     current motion.  Debtor's motion to strike portions of the declaration is denied.

1    forth above, § 157(d) requires the district court to withdraw the reference to the bankruptcy court

2    of any matter which requires "consideration of both title 11 and other laws of the United States

3    regulating organizations or activities affecting interstate commerce."  The Debtor must show:  (1)

4    that the adversary proceedings require "material consideration of non-bankruptcy federal law," and

5    (2) that the non-bankruptcy federal law to be considered "regulat[es] organizations or activities

6    affecting interstate commerce." Security Farms v. International Brotherhood, 124 F.3d 999, 1008

7    (9th Cir. 1997); In re American Freight System, Inc., 150 B.R. 790, 793 (D. Kan. 1993).[3]

8          Congress intended the mandatory withdrawal provision to be construed narrowly so as not

9    to create an "escape hatch" by which most bankruptcy matters could easily be removed to the

10   district court. In re Vicars Ins. Agency, Inc., 96 F.3d 949, 952 (7th Cir. 1996). "[S]ending every

11   proceeding that required passing 'consideration' of non-bankruptcy law back to the district court

12   would 'eviscerate much of the work of the bankruptcy courts'." Id. (quoting In re Adelphi

13   Institute, Inc., 112 B.R. 534, 536 (S.D.N.Y. 1990)); see also In re American Freight System, Inc.,

14   150 B.R. 790, 793 (D. Kan. 1993) ("consideration of the non-Code law must entail more than its

15   routine application to the facts"). As a result, the majority of courts require that "the issues in

16   question require more than the mere application of well-settled or 'hornbook' non-bankruptcy law;

17   'significant interpretation of the non-Code statute must be required." In re Vicars Ins. Agency,

18   Inc., 96 F.3d at 953; see also Lifemark Hospitals v. Liljeberg Enterprises, Inc., 161 B.R. 21, 24

19   (E.D. La. 1993).

20         The Debtor's challenge to the constitutionality of SB1779 is not the type of issue which

21   requires withdrawal of the reference under the second sentence of § 157(d).  First, the Court does

22   not believe resolution of the Debtor's constitutional challenges will require "more than the mere

23   application of well-settled or 'hornbook' non-bankruptcy law." In re Vicars Ins. Agency, 96 F.3d

24   at 953. Both the state courts and Judge Hayes in the Melanie H. case have rejected the Debtor's

25

26         [3]Some courts have also found the second sentence of § 157(d) requires that the proceeding
     for which a party seeks withdrawal involve a matter of bankruptcy law.  In re American Freight
27   System, Inc., 150 B.R. at 793-794 (discussing cases and rationale behind reading the second
     sentence of § 157(d) to require a bankruptcy law nexus). This Court is persuaded by the reasoning
28   of the In re American Freight System court, and finds that the Debtor does not have to show these
     adversary actions involve issues of bankruptcy law in order to justify mandatory withdrawal.

- 3 -

1  facial constitutional challenges to SB1779 under the due process, ex post facto, and bill of

2  attainder clauses of the U.S. Constitution.  Although the Debtor would like to reopen the litigation

3  of the constitutionality of SB1779, the remaining constitutional issue to be litigated in these

4  adversary actions is whether the statute, as applied, violates the due process clause.  The contours

5  of the right to due process are well-established in this area, and the Court does not believe

6  resolution of the "as applied" constitutional challenge will require "material consideration" or

7  "significant interpretation" of the United States Constitution.

8      More importantly, however, the Debtor's constitutional challenge to SB1779 does not

9  "require consideration of both title 11 and other laws of the United States *regulating organizations*

10 *or activities affecting interstate commerce*."  In arguing that the mandatory withdrawal provision

11 of § 157(d) applies to its constitutional challenge to the state statute, the Debtor either reads out of

12 the statute the language "regulating organizations affecting interstate commerce," or

13 misunderstands the significance of Congress' reference of the Commerce Clause.  Congress

14 invokes its power under the Commerce Clause to regulate conduct, which would otherwise be a

15 matter of local concern.  United States v. Allen, 341 F.3d 870, 881-82 (9th Cir. 2003).  In this way,

16 Debtor is correct that § 157(d)'s use of the phrase "affecting interstate commerce" is a term of art

17 implying that Congress sought to exercise its Commerce Clause power broadly.  United States v.

18 Gillies, 851 F.2d 492, 493 (1st Cir. 1988).  However, a review of the cases cited by the Debtor

19 demonstrates these sexual abuse cases are not ones arising under "other laws of the United States

20 regulating organizations or activities affecting interstate commerce."

21     In Educational Credit Management Corp. v. Barnes, 259 B.R. 328, 329 (S.D. Ind. 2001),

22 the district court withdrew the reference of an adversary action challenging the constitutionality of

23 federal statutes and regulations regarding how federal student loan collection fees could be

24 charged.  Similarly, in In re American Freight Systems, the district court withdrew the reference of

25 an adversary action involving the Interstate Commerce Act finding "[t]he interpretation of the Act,

26 in particular the filed rate doctrine, will have a substantial impact on interstate commerce." 150

27 B.R. at 795.  In In re Chateaugay Corp., 108 B.R. 27, 28-29 (S.D. N.Y. 1989), the district court

28 withdrew the reference of an adversary action filed by the Pension Benefit Guaranty Corporation

1    ("PBGC"), a wholly-owned United States Government corporation established under ERISA to

2    administer failed pension plans, finding claims and objections "directly challenge the

3    constitutionality of several ERISA provisions, and ... raise substantial novel issues of

4    interpretation under Title IV of ERISA." Unlike the present adversary actions, all of these cases

5    involve federal statutes regulating conduct within the scope of interstate commerce.

6          In its reply, the Debtor relies upon two additional cases where the district court withdrew

7    the reference of actions brought under the Civil Rights Act of 1964, 42 U.S.C. § 1983. In re

8    Baker, 86 B.R. 234 (D. Colo. 1988); In re Walton, 158 B.R. 939 (N.D. Ohio 1993). However, as

9    the court in Walton noted, the Civil Rights Act of 1964 was enacted pursuant to Congress' powers

10   under the Commerce Clause to regulate interstate commerce. 158 B.R. at 942 (citing Katzenbach

11   v. McClung, 379 U.S. 294 (1964)). By contrast, an action alleging a violation of the federal

12   constitution does not rely, as a source of authority, upon the Commerce Clause. If Congress

13   intended all actions involving constitutional issues to be subject to mandatory withdrawal, it could

14   have so provided. It did not. Instead, Congress in § 157(d)'s mandatory withdrawal provision

15   requires district courts to withdraw the reference only for those cases involving the interpretation

16   of federal laws "regulating organizations or activities affecting interstate commerce."

17         Also in its reply brief, the Debtor argues there is an interstate commerce nexus sufficient to

18   satisfy the second sentence of § 157(d) because the Debtor provides pastoral services to members

19   of the Catholic Church engaged in interstate travel. [Reply Brief, p. 5.] The case upon which the

20   Debtor relies, however, discusses whether a Catholic Church-run camp had a sufficient nexus to

21   interstate commerce, to allow regulation of its practices pursuant to the dormant Commerce

22   Clause. Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 572-74 (1997).

23   Section 157(d) does not require district courts to withdraw the reference as to any adversary action

24   involving an entity engaged in interstate commerce. Instead, § 157(d) requires withdrawal of the

25   reference of proceedings which require consideration of laws "regulating organizations or

26   activities affecting interstate commerce." Taken to its logical conclusion, the Debtor's argument

27   would require withdrawal of the reference of every adversary action against an entity engaged in

28   interstate commerce even if the case was of a purely local nature. Debtor's proposed interpretation

07cv1355

1  of § 157(d)'s mandatory withdrawal provision is far broader than Congress intended.  Therefore,

2  the Court finds it is not required to withdraw the reference under the second sentence of § 157(d).

3  *2.  Discretionary Withdrawal of the Reference*

4       Alternatively, the Debtor argues the Court should exercise its discretion to withdraw the

5  reference of the sexual abuse cases to the Bankruptcy Court.  In determining whether there is

6  cause to withdraw the reference, "a district court should consider the efficient use of judicial

7  resources, delay and costs  to the parties, uniformity of bankruptcy administration, the prevention

8  of forum shopping, and other related factors."  Security Farms, 124 F.3d at 1008.

9       The Debtor argues the efficient use of judicial resources, as well as avoidance of undue

10  delay and costs, favors withdrawal of the reference.  There is no dispute that these cases are non-

11  core proceedings and the District Court, rather than the Bankruptcy Court, must ultimately

12  estimate or liquidate the value of the claims.  28  U.S.C. § 157(b)(2)(B) and (O) (liquidation and

13  estimation of personal injury tort or wrongful death claims are not core proceedings); 28 U.S.C. §

14  157(b)(5) (district court "shall order that personal injury tort and wrongful death claims shall be

15  tried in the district court . . . ."); In re Cinematronics, Inc., 916 F.2d 1444, 1541 (9th Cir. 1990)

16  (because party had a right to a jury trial with regard to non-core proceedings, and because

17  bankruptcy court lacked authority to conduct jury trials, district court's denial of motion to

18  withdraw the reference was an abuse of discretion.).

19       The Debtor argues that because the Bankruptcy Court ultimately cannot adjudicate these

20  issues, it would be a waste of resources to require parallel proceedings.  The Debtor plans, in the

21  very near future, to file motions to estimate the claims, and this Court will be required to formulate

22  and adopt a plan for estimation.  If this Court does not withdraw the reference, the Debtor argues

23  the parties will be required to litigate the issue of how the cases should be estimated and liquidated

24  both in this Court and in the Bankruptcy Court.  If the Bankruptcy Court grants the motions to

25  remand, now pending for hearing in 42 of the adversary actions, the Debtor argues it will be

26  required to prepare for trial in state court at the same time it is formulating a plan for estimation of

27  the claims in this Court.

28       In addition, the Debtor points out the Melanie H. case, pending before Judge Hayes,

- 6 -

07cv1355

1   presents the same issues for adjudication as the other Clergy II cases. As a result, the Debtor

2   argues it would be appropriate to adjudicate all of the remaining Clergy II cases in this Court.

3   Finally, the Debtor argues a remand to state court for purposes of trial is inconsistent with

4   Magistrate Judge Papas' ongoing mediation efforts. The Debtor argues any remand will impact

5   attempts to have the Clergy II claims estimated, will defeat the goal of equitable distribution under

6   a reorganization plan, and will result in Plaintiffs recovering on a "first come, first served" basis.

7          In opposition, the Committee argues judicial efficiency, avoidance of undue delay and

8   costs, uniformity of bankruptcy administration, and the prevention of forum shopping all weigh in

9   favor of leaving the adversary actions in the Bankruptcy Court at this time. The Committee does

10  not dispute that the Bankruptcy Court ultimately cannot conduct jury trials or estimate claims for

11  purposes of <u>distribution</u>. However, the Committee points out that estimation of a claim for

12  purposes of <u>confirming</u> a plan can be considered a core proceeding completely within the scope of

13  the bankruptcy court's powers. <u>In re Aquaslide N'Dive Corp.</u>, 85 B.R. 545, 549 (Bankr. App. 9th

14  1987); <u>In re G-I Holdings, Inc.</u>, 295 B.R. 211, 218-19 (D.N.J. 2003) (given its understanding of

15  the facts and issues in the case, the bankruptcy court was in a better position to initially determine

16  what estimation process should be used in asbestos adversary actions).

17         The valuation of the sexual abuse cases is one of the primary issues in the bankruptcy

18  proceeding, and the Committee argues withdrawal of the reference of these cases will undermine

19  the administration of the bankruptcy proceeding. The Committee argues the Court should not

20  withdraw the reference on these cases until Judge Adler has had the initial opportunity to consider

21  how and when to begin the estimation process in the overall context of the chapter 11 proceeding.

22  In addition, the Committee points out the adversary actions were pending in state court for four

23  years until the Debtor filed bankruptcy and removed them to the bankruptcy court. Although the

24  Debtor argues the Bankruptcy Court has done nothing with the adversary actions since their

25  removal, the Committee has filed motions to remand for which the Bankruptcy Court has set a

26  hearing on August 23, 2007. The Committee argues Magistrate Judge Papas can continue his

27  mediation of the value of the claims, and Judge Adler can rule on the remand motions, without this

28  Court becoming involved at this point of the proceedings. Finally, the Committee argues the

1 | timing of the Debtor's motion, filed just before the Bankruptcy Court is set to hear the Plaintiffs'

2 | motions to remand, strongly suggests forum shopping.

3 |      Upon consideration of the arguments of the parties, the Court is persuaded that cause does

4 | not exist at this time to withdraw the reference of the 127 adversary actions. Valuation of the

5 | adversary actions is one of the central issues that must be resolved in the bankruptcy proceeding.

6 | At the proper time, if the parties cannot reach a settlement regarding the value of the adversary

7 | actions for purposes of distribution, this Court will need to estimate or liquidate the claims.

8 | However, at this juncture, the Bankruptcy Court is in the best position to determine from a case

9 | management standpoint how and when these actions should proceed for estimation or liquidation.

10 | The Bankruptcy Court made arrangements for Magistrate Judge Papas to conduct mediation

11 | proceedings, and initially stayed consideration of the Plaintiffs' remand motions pending the

12 | outcome of the mediation efforts. The Court is concerned that withdrawal of the reference at this

13 | time will cause undue delay, result in the inefficient use of judicial resources, and disrupt the

14 | orderly administration of the bankruptcy proceeding. The Bankruptcy Court has been managing

15 | these cases since they were removed from the state court within the context of the entire

16 | bankruptcy proceeding. That court is acutely aware of the positions of the parties regarding how

17 | and when a value should be fixed with regard to the adversary actions for purposes of formulating

18 | a plan of reorganization. The Court believes these issues are best left to the discretion of the

19 | Bankruptcy Court at this point in the proceedings.

20 |      The Court will, however, retain jurisdiction over the adversary actions. The Court sets a

21 | status hearing on Monday, November 26, 2007 at 10:30 a.m. to determine whether it would be

22 | appropriate to withdraw the reference of the adversary actions and proceed with the estimation or

23 | liquidation process. Prior to that hearing, the Debtor *shall not file* in this Court motions for

24 | estimation of the claims. On or before November 2, 2007, the Debtor shall file in this Court a

25 | status report and may at that time renew its motion for withdrawal of the reference. On or before

26 | November 16, 2007, the Committee and Plaintiffs may file their own status report.

27 | <div align="center">***Conclusion***</div>

28 |      For the reasons explained above, the Court DENIES the Debtor's motion for withdrawal of

<div align="center">- 8 -</div>

the reference. The parties shall appear before Chief Judge Gonzalez in Courtroom 1 on Monday,
November 26, 2007 at 10:30 a.m. for a status hearing.  The Debtor shall give notice of this order to
all parties forthwith. The Clerk shall docket this order in each of the related actions.

**IT IS SO ORDERED**.

**DATED:  August 20, 2007**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

07cv1355